UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON
CRIMINAL ACTION NO. 2:06-CR-15-DLB-JGW-1
CIVIL ACTION NO. 2:13-CV-7267-DLB-JGW

UNITED STATES OF AMERICA                                               PLAINTIFF

V.

DAVID HOPPER                                                          DEFENDANT

## REPORT AND RECOMMENDATION

On March 15, 2013, Defendant David Hopper ("Hopper") filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Doc. 79). The United States of America ("United States") filed a response on June 17, 2013 (Doc. 92), and Hopper filed a reply to the United States' response on July 8, 2013 (Doc. 93). Having considered the record and applicable law, I recommend that Hopper's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 be denied.

## I.     Factual and Procedural History

Defendant David Hopper was charged with three counts of robbery in interstate commerce and three counts of brandishing a firearm during and in relation to the robberies. *See* Doc. 6. At his arraignment, Hopper's counsel successfully moved the Court to order Hopper to undergo a mental competency and insanity evaluation. *See* Docs. 10, 11. Based upon the forensic report of licensed psychologist Judith Campbell, Ph.D., the Court found Hopper competent to stand trial. *See* Doc. 18. Nonetheless, Hopper's counsel filed a notice of intent to use insanity as a defense at trial. *See* Doc. 20.

On August 20, 2007, the Court granted Hopper's motion to continue his trial date based on the need for Hopper's hired psychologist, Dr. Robert Noelker, to finish his report. *See* Docs. 26, 30. On August, 24, 2007, the Court ordered that Dr. Robert Noelker and Social Worker

Carol Brady were to have access and permission to visit Hopper at the Boone County Jail so that they could complete their psychological evaluations of Hopper. *See* Doc. 32.

On October 2, 2007, Hopper filed a Notice of Intent to Call Expert Witnesses, identifying Dr. Robert Noelker and Carol Brady as witnesses to support his insanity defense at trial. *See* Doc. 40. That same day, the United States filed a motion to strike the expert notice, arguing that Hopper has failed to comply with Fed. R. Crim. P. 16 because he had not provided his experts' reports to the United States. *See* Doc. 41. On October 4, 2007, Hopper filed a response to the United States' motion to strike, providing a copy of Brady's report and advising the Court that he no longer intended on calling Dr. Noelker as an expert witness. *See* Doc. 42.

On October 12, 2007, the parties advised the Court that they had entered into a plea agreement. *See* Doc. 55. Per the plea agreement, Hopper pleaded guilty to Counts 2 and 6, each of which were violations of 18 U.S.C. 924(c) and carried a mandatory term of seven years and twenty-five years, respectively. *See* Doc. 65. In exchange, the United States agreed to dismiss the remaining charges. *Id*.

At the outset of the October 12, 2007 hearing, Hopper's counsel stated, "[F]or the record, I would just indicate that we're prepared to waive and forego our former affirmative defense of insanity and enter a plea here today." *See* Doc. 91 at p. 4. Additionally, the following dialogue occurred at the October 12, 2007 hearing:

> THE COURT: So according to this agreement, Mr. Hopper, you are going to be pleading guilty to those two counts set forth by the prosecutor, which will result in a statutory sentence of 32 years. You agree to pay restitution to the victims of the offenses, including the victims of the dismissed counts. You waive your right to appeal and the right to collaterally attack the guilty plea, conviction and sentence, including any order of restitution. The United States will move to dismiss the other counts at sentencing, and the agreement will be made pursuant to Rule 11(c)(1)(C), which requires the agreement to be binding on the Court. So once the Court accepts this agreement, I mean, the sentence is 32 years in federal court.

2

THE DEFENDANT: I understand that, sir.

******

THE COURT: Now, this plea that has been proposed is a straight guilty plea. There's no insanity defense. You're going to have to admit both of these charges in Counts 2 and 6. Do you understand that?

THE DEFENDANT: Yes, I do.

******

THE COURT: The plea agreement, according to the letter dated August 28, 2007, it does not bind any other jurisdiction. I bring that up because I know from reviewing the bond report which was prepared earlier by the probation office here that you have several other jurisdictions that have charges pending against you. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: And what happens here has no impact on what happens in those jurisdictions. Do you understand that?

THE DEFENDANT: I do.

******

THE COURT: Mr. Hopper, has anyone made any promises to you at all, such as -- and I'm using this as an example -- if you plead guilty here, whether it be the Ohio authorities or whether it be Montgomery County, Warren County, Hamilton County, or the state of Kentucky authorities, Grant County, Campbell County, they'll run their time concurrently with the federal time if you plead guilty?

THE DEFENDANT: I've been told there's a possibility of, but no guarantees.

THE COURT: The important thing for you to recognize is there are no guarantees.

THE DEFENDANT: Yes.

THE COURT: I cannot and I will not order as part of any sentence that I impose that the time that I impose in sentencing you will run concurrently or consecutively with any yet-to-be-imposed sentence. That's just not permitted. Do you understand that?

3

> THE DEFENDANT: I do.
>
> THE COURT: It's not my intention in this case to continue the sentencing in federal court based upon what may happen in the state jurisdictions. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> ******
>
> THE COURT: Thirty-two years means just that, 32 years. Understand?
>
> THE DEFENDANT: Yes.
>
> ******
>
> THE COURT: What happens in state court happens in state court. And I don't profess to predict, nor would I predict what may happen. That's up to the -- any jury or your plea, if you want to try to plead in state court. That's up to you. I don't control any of that.

*Id*. at pp. 4, 8, 10, 12-13, 19, 30-31.

Additionally, the following colloquy took place at Hopper's sentencing on November 7, 2007:

> THE COURT: Paragraph 6 includes a waiver of appeal and a waiver of the right to attack collaterally the guilty plea, conviction and sentence, including any order of restitution. Is that your understanding, Mr. Hopper? You will be waiving any right you have to file an appeal of my sentence?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: You've discussed that with Mr. Schneider, correct?
>
> THE DEFENDANT: Yes, sir, I have.
>
> THE COURT: You've also given up your right to attack collaterally the guilty plea, conviction and sentence, Mr. Hopper. That is a separate right that you may have under some limited circumstances to file what's generally referred to as a motion to vacate your sentence or conviction. Do you understand that?
>
> THE DEFENDANT: Yes, I do.

4

THE COURT: Did you discuss that right with Mr. Schneider as well?

THE DEFENDANT: Yes, we did.

THE COURT: I do find the waiver of appeal and the waiver of the right to attack collaterally the guilty plea, conviction and sentence is a knowing and voluntary waiver, that Mr. Hopper understands both of those waivers. Now, paragraph 10 of the plea agreement also reflects, and I know we discussed this at the time I accepted your plea, that this particular conviction and sentence does not have any bearing whatsoever on the resolution of any state court cases. You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And the sentence I impose, because you haven't been adjudicated guilty of other cases, you have these two gun charges which you entered a guilty plea to. I'm not going to be imposing a sentence either consecutively or concurrently with the yet-to-be imposed sentence. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If, in fact, you're adjudicated guilty of other charges in other jurisdictions, those judges will make that final determination. Do you understand that?

THE DEFENDANT: Yes, I do.

******

THE COURT: I would note the serious mental health issues that we've already discussed are well documented in Dr. Campbell's report. The sentencing memorandum, at paragraphs 15, 16 and 17, identify those problems as well. You have a very serious need for treatment. I'm going to recommend that the Bureau of Prisons take a strong look at that, do whatever they can to treat your situation while you are incarcerated. You have pending charges in Campbell and Grant Counties here in Kentucky which result from the conduct to which you pled guilty here, Counts 2 and 6. There are also pending rape charges in Warren, Montgomery and Hamilton Counties in Ohio as well as Dearborn County, Indiana. Your situation is one that is grim going forward. I hope that with the beginning of putting some of these cases to final resolution, the victims can start healing. I can't predict what will happen in the other cases. I can only sentence you for what you pled guilty to here, which is a 32-year sentence.

*See* Doc. 77 at pp. 3-5, 10-11.

The plea agreement was also memorialized in a written document, signed by Hopper, Hopper's counsel, counsel for the United States, and Judge Bunning. *See* Doc. 65. The tenth paragraph of the plea agreement stated:

> This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities. The defendant is aware that other state prosecuting authorities have charges pending against him and he understands that this agreement shall have no bearing whatsoever on the resolution of those cases. The defendant understands that U.S. District Court Judge David L. Bunning has no authority in this case to run the term of imprisonment agreed to herein concurrent with any sentence which may be subsequently imposed by any other jurisdiction. Any determination regarding any future sentences imposed in any subsequent state court proceedings will be addressed by the court having jurisdiction of the case at that time.

*Id.* at ¶ 10. Ultimately, as per the plea agreement, the Court sentenced Hopper to thirty-two (32) years imprisonment. *See* Doc. 67.

On March 15, 2013, Hopper filed the pending motion to vacate his sentence pursuant to 28 U.S.C. § 2255. *See* Doc. 79.

## II. Analysis[1]

> A § 2255 motion does not have to be founded on constitutional error or even federal law. *Watt v. United States,* 162 F. App'x 486, 502–03 (6th Cir. 2006); *see also Metheny v. Hamby,* 835 F.2d 672, 674 (6th Cir. 1987). But to succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States,* 165 F.3d 486, 488 (6th Cir.1999) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S. Ct. 1710, 123 L.Ed.2d 353 (1993)). To obtain relief under § 2255 for a non-constitutional error, a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process. *See Riggs v. United States,* 209 F.3d 828, 831 (6th Cir. 2000), *recognized as abrogated on other grounds by Kumar v. United States,* 163 F. App'x 361, 366 (6th Cir. 2006); *see also McNeal v. United States,* 17 F. App'x 258, 260–61 (6th Cir. 2001).

---

[1] The United States' response does not allege that the motion is untimely, nor does the United States argue that the plea is barred by the wavier provision of the plea agreement.

6

*United States v. Goddard*, 2013 WL 5410939, at *5 (E.D. Ky. Sept. 26, 2013).

**A. Hopper is Not Entitled to Relief For the Alleged Ineffective Assistance of Counsel and the Purported Unkept/Unfulfilled Promises of the United States and/or the Court**

On his first claim, Hopper argues that both his counsel and the Court improperly advised him that his 32-year sentence could run concurrently to any yet-to-be-imposed state court sentence if those courts so ordered. *See* Doc. 79 at p. 4; *see also* Doc. 93 at p. 5. Hopper asserts that this alleged advice is legally incorrect[2], and he would not have pleaded guilty had he not received the allegedly incorrect advice. *See* Doc. 93 at 7-9. Hopper claims that after his federal sentence was imposed, the state courts ordered their sentences to run concurrent to his federal sentence. *Id*. at p. 5. However, the Bureau of Prisons notified Hopper – who is currently serving his Kentucky state sentence in a Kentucky state penitentiary – that his federal sentence would not begin to run until he was taken into exclusive federal custody. *See* Doc. 87-1.

The gravamen of Hopper's claim is that his plea was not knowing and voluntary because his counsel and the Court's use of discretionary language regarding the concurrent-vs.-consecutive nature of his sentence failed to advise him adequately of the direct consequences of his plea. "[A] guilty plea must be voluntarily entered with a full understanding of the direct

---

[2]For the purposes of this report and recommendation, it is unnecessary to determine conclusively if Hopper is correct when he asserts that a state court is foreclosed from running its sentence concurrent to a federal court's sentence under 18 U.S.C. § 924(c). Nonetheless, a brief discussion of the applicable law will follow. In *United States v. Gonzales*, 520 U.S. 1, 2 (1996), the Supreme Court held that a federal court may not direct that a prison sentence under 18 U.S.C. § 924(c) run concurrently with a state-imposed sentence. However, the Supreme Court stated that it was not ruling that a later-sentencing state court was bound to order its sentence to run consecutively to a § 924(c) term of imprisonment. *Id*. at 10. Accordingly, Hopper cites to no binding precedent—nor has the Court independently located such precedent--which establishes that the Court's insinuation that the later-sentencing state court had discretion to run a sentence concurrent to Hopper's federal sentence was incorrect. The fact that Hopper is currently serving a state sentence in a state penitentiary while not receiving credit for his federal sentence is in accord with *Gonzales* and does not conflict with the Court's statements. "[W]hile a state court may order its sentence to run alongside [a defendant's] federal sentence, a state court's order directing concurrent sentencing does not and cannot cause a previously-imposed federal sentence to commence until the state sentence has expired." *Ramirez v. Withers*, 2013 WL 2903278, at *4 (E.D. Ky. June 13, 2013). "[A] state court may express its intent that a defendant's state sentence run concurrently with a previously imposed federal sentence, [but] this intent is not binding on federal courts or the BOP." *Id.* (quoting *United States v. Allen,* 124 F. App'x 719, 720 (3d Cir. 2005)).

consequences of the plea." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citations omitted).

In *United States v. Ospina,* 18 F.3d 1332, 1334 (6th Cir. 1994), the defendant argued that "because the district court used discretionary rather than mandatory language in discussing whether the sentence would run consecutively, his plea was unknowing." The Sixth Circuit rejected the argument, holding that because the "defendant knew before pleading guilty that he *could* be sentenced to a five-year term of imprisonment to be served upon completion of his state term of imprisonment[,]" any error was relegated "to the harmless category because no substantial right was affected by the district court's word choice." *Id*. (emphasis added). Thus, the Court's use of discretionary language regarding the state courts' ability to order their sentences to run concurrently to Hopper's federal sentence does not make Hopper's plea unknowing.

Additionally, the fact that Hopper may not have been fully informed of the concurrent-vs.-consecutive nature of his yet-to-be-imposed state sentences does not render his plea unknowing or involuntary. *See Hall v. Bradshaw*, 466 F. App'x 472, 474 (6th Cir. 2012) ("[T]he fact that the trial court did not expressly inform [the defendant] that his state sentence could be made consecutive to his federal sentence did not render his plea involuntary."); *United States v. Ferguson*, 918 F.2d 627, 630-31 (6th Cir. 1990) ("[U]nder the great weight of the authority, whether a federal sentence runs consecutive to or concurrent with a state sentence is not considered a direct consequence of the plea.") (citations omitted); *United States v. Hernandez*, 234 F. 3d 252, 256-57 (5th Cir. 2000) (finding that defendant need not be warned that his federal sentence may run consecutively to a later-imposed state sentence because the effect of the state

8

court's concurrent -vs.-consecutive decision would not affect the length of the defendant's federal term of imprisonment).

Hopper also asserts that his counsel was ineffective for incorrectly advising him that the state courts could run their sentences concurrent to this Court's sentence. "A guilty plea may be found involuntary or unintelligent if it was induced by the ineffective assistance of counsel." *United States v. Scharstein*, 2013 WL 4809256, at*4 (E.D. Ky. Sept. 9, 2013) (citing *Hill v. Lockhart,* 474 U.S. 52, 56 (1985)). "A 'defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the' range of competence demanded of attorneys in criminal cases." *Id.* (citing *Hill*, 474 U.S. at 56–57). As established above, the use of discretionary language regarding the concurrent-vs.-consecutive nature of Hopper's subsequent state sentences does not render his plea agreement unknowing or involuntary. Accordingly, Hopper is not entitled to relief under this claim.

### B. Hopper's Collateral Attack Regarding Newly-Discovered Evidence is Without Merit

Next, Hopper asserts that he has presented newly-discovered evidence to the Court that establishes his actual innocence. More specifically, Hopper presents a letter from his former examining psychologist, Dr. Robert Noelker, which Hopper asserts establishes that he could not have had formed the intent required for the charges of which he pleaded guilty.

"To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citation and internal quotations omitted). To be credible, an actual innocence claim requires "new reliable evidence — whether it be exculpatory

9

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schulp v. Delo*, 513 U.S. 298, 324 (1995).

The newly-discovered letter from Dr. Noelker was written to Jeff Brunk, Hopper's attorney for his charges in Campbell County state court, on September 9, 2006, stating:

> I have just finished reviewing all of the data that I have on David Hopper. It is my preliminary opinion that Mr. Hopper suffers from several mental health disorders that compromise his ability to conform his behavior to the requirements of the law. In particular, those disorders include a dissociative identity disorder, posttraumatic stress disorder, and probably bipolar disorder. In order for me to testify confidently and completely as to the relationship between these disorders and his criminal behavior it will be necessary that I review additional documents. Those documents include, but are not limited to the following . . .

*See* Doc. 87-2. Dr. Noelker then listed six (6) different documents that he would need to review before he could "testify confidently and completely." *Id*.

Despite this "preliminary opinion," Dr. Noelker wrote a letter to Tim Schneider, Hopper's counsel for his federal charges, on October 2, 2007, stating:

> I have struggled with this question ever since you asked it yesterday. I really do not know how I will be able to help you with this case, however, I can state within the realm of reasonable psychological probability that David is not your typical "rapist." I really do not believe that he represents a DID patient or, in the alternative, I can not [sic] testify within reasonable psychological certainty that he does. He has a long history of dysfunctional family, especially in the first ten to fifteen years of his life, and dysfunctional families typically produce aberrant behavior of one kind or another. I can not [sic] say that he meets the definition for insanity or incompetence. He may, if his history is proven true, represent an adult patient who has some posttraumatic stress features, however, they would not rise to the level of a psychiatric or mental health defense. I really wish I could be more helpful.

*See* Doc. 92-5.

Clearly, Dr. Noelker's "preliminary opinion" regarding Hopper's mental capacity was not a final opinion regarding Hopper's mental capacity.[3] Hopper has also submitted copies of notes purportedly from Dr. Noelker's interview of Hopper's wife. *See* Doc. 95. Hopper asserts that these notes also bolster the mental defect/insanity defense he relied upon prior to his plea. *Id*. However, in light of Dr. Noelker's final opinion that Hopper was neither insane nor incompetent, these notes do not support Hopper's claim of actual innocence.

Accordingly, Hopper's purportedly newly-discovered evidence does not even approach the level necessary to be exculpatory. In other words, this evidence does not establish that it is more likely than not that no reasonable juror would have convicted Hopper of these charges.

Thus, Hopper's claim regarding newly-discovered evidence is without merit.

### C. **Hopper's Claim That He Was Mentally Incompetent at the Time of His Guilty Plea is Without Merit**

Lastly, Hopper asserts that he was mentally incompetent at the time of his guilty plea and, thus, his guilty plea was not knowing and voluntary.

> An accused is competent to enter a guilty plea if he has both, the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational understanding of the proceedings against him." *Dusky v. United States,* 362 US. 402, 403 (1960) *(per curiam); United States v. Ford,* 184 F.3d 566, 580 (6th Cir. 1999), *cert denied* 528 U.S. 1161 (2000). In order for a defendant to prevail on a challenge to his competency to enter a guilty plea, the record must reflect that the court was presented with sufficient evidence to believe that a psychiatric examination of the defendant was required. The essential inquiry rests on whether a reasonable judge should have experienced doubt with respect to the defendant's competency to enter a plea. *Williams v.*

---

[3] In his reply memorandum, Hopper makes a baseless allegation that Dr. Noelker's change in opinion was likely influenced by correspondence he had with United States Probation Specialist Kim Heidel. *See* Doc. 93 at p. 17. Hopper requests that the Court hold an evidentiary hearing on this matter. *Id*. "An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). "Thus, no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id*. (citation omitted). Hopper admits that his accusation "is only an allegation without any substantial proof at this time." *See* Doc. 93 at p. 19. Because nothing in the record supports Hopper's speculative allegation, no evidentiary hearing is necessary.

> *Bordenkircher,* 696 F.2d 464, 467 (6th Cir.), *cert. denied,* 461 U.S. 916 (1983); *Pate v. Smith,* 637 F.2d 1068 (6th Cir. 1981). The defendant bears the burden of proving that he was not mentally competent to enter his plea. *See Conner v. Wingo,* 429 F.2d 630, 639 (6th Cir. 1970), *cert denied.* 406 U.S. 921 (1972). To satisfy this burden, the defendant must produce facts that "positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to his actual competency during the guilty plea hearing." *Carter v. Johnson* 131 F.3d 452, 460 (5th Cir. 1997); *Sheley v. Singletary,* 955 F.2d 1434 (11th Cir. 1992); *United States ex. rel. Lewis v. Lane,* 822 F.2d 703 (7th Cir. 1987).

*United States v. Dukes*, 2012 WL 4216092, at *5 (E.D. Ky. Aug. 30, 2012), *report and recommendation adopted*, 2012 WL 4215880 (E.D. Ky. Sept. 18, 2012).

In light of the clear and unequivocal colloquy between Hopper and the Court during Hopper's plea hearing and his sentencing hearing, no reasonable judge should have experienced doubt as to Hopper's competency to enter a plea. Additionally, the fact that the Court acknowledged Hopper's mental health issues during the hearings does not establish that Hopper was incompetent. In fact, the Court had previously held a mental competency hearing and found Hopper mentally competent to stand trial. *See* Doc. 18. Moreover, as established previously, Hopper's reliance on Dr. Noelker's September 9, 2006 letter is unavailing. Accordingly, Hopper's claim that he was mentally incompetent at the time of his guilty plea is without merit.

## III. Conclusion

For the foregoing reasons, it is **RECOMMENDED** that:

Defendant David Hopper's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Doc. 79) should be **denied**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not

"specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

This the 6th day of November, 2013

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge